**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

SHERI LYNN GUADAGNO,     )
                                )
           Plaintiff,    )
                                )
                                )  Case No. CIV-18-095-KEW
                                )
COMMISSIONER OF THE SOCIAL     )
SECURITY ADMINISTRATION,      )
                                )
          Defendant.    )

## OPINION AND ORDER

Plaintiff Sheri Lynn Guadagno (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. She has a limited education and worked in the past as a home health aide. Claimant alleges an inability to work beginning on April 1, 2015, due to asthma, chronic obstructive pulmonary disease ("COPD"), high blood pressure, cervical spinal degeneration, spinal stenosis, Raynaud's syndrome, carpal tunnel syndrome, migraines, anxiety disorder, and depression.

## Procedural History

On May 11, 2015, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 8, 2016,

the Administrative Law Judge("ALJ") Christopher Hunt conducted a video hearing from Tulsa, Oklahoma, and Claimant appeared in Poteau, Oklahoma. On February 28, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on February 8, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to reach a proper RFC determination with regard to her physical impairments; (2) failing to reach a proper RFC determination with regard to her mental impairments; and (3) failing to sustain his burden at step five.

## Physical RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of asthma, chronic obstructive pulmonary disease ("COPD"), bilateral carpal tunnel syndrome ("CTS"), status post release surgeries, major depressive disorder, and generalized

anxiety disorder. (Tr. 18). He determined Claimant could perform less than the full range of light work. In so doing, the ALJ found Claimant could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, and sit, stand and/or walk up to six hours in an eight-hour workday. Claimant could not climb ladders, ropes, or scaffolding, but she could occasionally climb ramps and stairs and balance, stoop, kneel, crouch, and crawl. She was limited to simple, repetitive and routine tasks, with only occasional contact with supervisors and co-workers and superficial contact with the general public. She should work with things rather than people. Claimant should not be subject to strict production standards "such as might be required of a poultry line worker or an assembly line worker but not a bottling line attendant who merely does quality assurance and removes defective product." Claimant could frequently use her upper extremities for grasping, handling, and fingering. (Tr. 23).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of small products assembler, electronics assembler, and plastic products assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 30-31). As a result, the ALJ concluded that Claimant was not under a disability from April 1, 2015, through the date of his decision. (Tr. 31).

Claimant contends the ALJ's RFC assessment with regard to her physical impairments is unsupported by substantial evidence. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant first asserts that even though the ALJ determined she suffered from severe impairments of asthma and COPD, he failed to include any environmental limitations in the RFC. The ALJ specifically discussed the Claimant's COPD and asthma in his

summary of the medical evidence.  The ALJ noted Claimant smoked for 23 years, but she stopped in 1999.  Treatment records from Dr. Jeffrey Hamby indicated that he advised Claimant that her breathing would get better if she stopped smoking.  (Tr. 25, 492, 495). Claimant was provided a nebulizer and prescribed Ventolin and then later prescribed Advair and Albuterol.  (Tr. 25, 494, 501).  The ALJ referenced a topography scan of Claimant's chest from July of 2014, which showed minimal plural scarring and scattered emphysematous changes in the lungs, but it was otherwise normal. (Tr. 26, 371).  He further referenced Dr. Hamby's treatment notes from November of 2015, which noted Claimant showed no breathing problems and was clear to auscultation bilaterally with no wheezing, rhonchi, or rales.  (Tr. 26, 408).

Based on this evidence, the ALJ determined Claimant's "medically determinable impairments of COPD and asthma when considered with her other severe impairments would limit her to light work activity."  He noted she was taking medication, but she could "manage her symptoms without any severe exacerbations or significant functional limitations."  He further considered that she had not testified to any significant breathing issues or chronic shortness of breath, and that his finding was consistent with the findings of consulting physician Azhar Shakeel, M.D. (Tr. 26, 395-402).  Thus, the ALJ considered Claimant's asthma and COPD when assessing the RFC.  *See* 20 C.F.R. § 404.1545(a)(2) (noting

the ALJ must consider both severe and non-severe impairments when assessing the RFC).

Claimant also contends the ALJ failed to consider and include limitations in the RFC pertaining to her non-severe impairments of degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and migraines. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250, at *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends her degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and migraines should have been included as a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe"

at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291–292 (10th Cir. 2008).

Although the ALJ did not find Claimant's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and migraines were severe impairments at step two, he did consider them in his decision and in formulating the RFC. The ALJ thoroughly detailed the medical evidence with regard to these impairments in his step two analysis. Based on that evidence, he determined that "[C]laimant's medically determinable degenerative disc disease of the cervical spine and lumbar spine did not cause more than minimal limitation in the [C]laimant's ability to perform basic work activities[.]" (Tr. 19-20). The ALJ further discussed the evidence of Claimant's migraines and concluded that "[C]laimant's medically determinable impairment of migraine headaches did not cause more than minimal limitation in

the [C]laimant's ability to perform basic work activities." (Tr. 20). The ALJ further concluded that he "considered all of the [C]laimant's medically determinable impairments including those that are not severe, when assessing the [C]laimant's [RFC]." (Tr. 21).

The ALJ also considered these non-severe impairments in his summary of the medical evidence when assessing the RFC. He noted that "the [RFC] has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the [Claimant's] medically determinable impairments." (Tr. 23). When discussing the medical evidence, he referenced findings with regard to Claimant's lumbar and cervical spines and her complaints of migraines. (Tr. 25). The ALJ's decision demonstrates that he did not simply disregard Claimant's degenerative disc disease of the lumbar spine or the cervical spine and that he considered her migraines when assessing the RFC. The record indicates that the ALJ considered the effects of both severe and non-severe impairments in his decision. 20 C.F.R. § 404.1545(a)(2). The Court finds no error.

Claimant argues the ALJ inappropriately considered the physical findings by consulting physician Azhar Shakeel, M.D., when determining the RFC. She contends the ALJ should have discarded the opinion because it was inconsistent with the record as a whole. The ALJ discussed Dr. Shakeel's examination findings

in detail, noting they were "unremarkable except for some noted back pain." He noted that Dr. Shakeel's findings did not support Claimant's allegations, but the one-time examination was not "entirely consistent with other evidence in the file." The ALJ gave "significant but not great weight" to Dr. Shakeel's findings. (Tr. 25). The ALJ is required to consider every medical opinion, as he did with Dr. Shakeel's opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record[.]"). As noted by Claimant, Dr. Shakeel did not impose any functional limitations on Claimant. There is no error here.

Claimant further argues the opinions from the non-examining state agency physicians, Donald Baldwin, M.D. and James Metcalf, M.D., are not substantial evidence to support the ALJ's RFC. The ALJ referenced the physicians' opinions, noting they determined Claimant "could perform light work activity with certain postural and environmental limitations. (Tr. 29, 78-80, 95-97). He afforded "some but not great weigh[t] to the opinions of the State Agency medical consultants[.]" (Tr. 29). The ALJ was entitled to rely on the state agency physicians' opinions, *see Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (noting that a non-examining medical source is an opinion the ALJ may consider), and the Court finds no error by him for doing so.

## Mental RFC Determination

Claimant contends the ALJ's RFC with regard to her mental impairments is unsupported by substantial evidence. Claimant contends that although the ALJ afforded "great" weight to the opinions of consulting psychologist Theresa Horton, Ph.D., he failed to account for all the mental limitations assessed by Dr. Horton without explaining why. Specifically, Claimant asserts Dr. Horton determined that Claimant "likely would not adjust well into areas that are densely populated and/or fast paced." (Tr. 407).

The ALJ discussed Dr. Horton's examination of Claimant in the decision and noted her determination that Claimant would not adjust well in densely populated and/or fast paced areas. The ALJ assigned "great" weight to Dr. Horton's opinions, noting they were supported by her clinical assessment, consistent with Claimant's limited history of specialized mental health treatment, and took into account her level of daily activities. (Tr. 28). The ALJ included a limitation in the RFC that "[C]laimant should work with thing[s] rather than people," and he limited Claimant's contact with others, including occasional contact with supervisors and co-workers and superficial contact with the general public. (Tr. 23). The ALJ's RFC sufficiently accounted for the limitation by Dr. Horton.

Claimant also asserts the ALJ failed to include limitations from the non-examining state agency psychologists in the RFC even

though he gave their opinions "partial" weight. Specifically, Claimant contends the ALJ failed to include limitations for a structured setting in order for her to carry out instructions and assignments in an appropriate time frame. (Tr. 81, 98). However, the ALJ accounted for this limitation in the RFC, finding that Claimant "should not be subject to strict production standards such as might be required of a poultry line worker or an assembly line worker but not a bottling line attendant who merely does quality assurance and removes defective product." (Tr. 23).

Claimant further contends the ALJ should have included additional restrictions in the RFC to accommodate her moderate limitation in concentration, persistence, or pace. It has been established, however, that "the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case." *Bales v. Colvin*, 576 Fed. Appx. 792, 798 (10th Cir. 2014); *see also* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *4 (July 2, 1996)("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in

the broad categories found in paragraphs B and C of the adult mental disorders listings."). The Court finds no error in this regard.

## Step Five Determination

Claimant asserts the VE's testimony as to the jobs Claimant could perform with the RFC was inconsistent with the *Dictionary of Occupational Titles* ("DOT") and the ALJ failed to resolve the conflict. Specifically, Claimant argues the job of small parts assembler (DOT # 706.684-022) required an employee to frequently be a member of a group. Claimant asserts this is contrary to the ALJ's limitation in the RFC that Claimant only occasionally interact with co-workers.

The small parts assembler job requires that the employee "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT # 706.684-022. Referencing "Taking Instructions – Helping" involving people, interaction with people is noted to be "not significant." Although the position does not appear to require the type of frequent "group" exposure to co-workers suggested by Claimant, the VE also testified Claimant could perform the jobs of electronics assembler and plastic products assembler. (Tr. 64). He testified the electronics assembler job had 320,000 jobs in the national economy and the plastic products assembler job had 67,000 jobs in the national economy. The ALJ included this information

in the decision. (Tr. 31). Thus, to the extent the VE's testimony as to the small parts assembler job was in conflict with the DOT, the error is harmless, because the jobs of electronics assembler and plastic products assembler remain and exist in significant numbers in the national economy. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding harmless error when jobs that should not have been considered were eliminated and 152,000 jobs still remained).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 30th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE